# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:10-CV-00145-DCK

| | |
|---|---|
| OAKRIDGE ASSOCIATES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>AUTO-OWNERS INSURANCE COMPANY,<br><br>    Defendant. | ORDER |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion For Summary Judgment" (Document No. 16) and "Plaintiff's Motion For Summary Judgment" (Document No. 20) filed October 18, 2010. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. §636(c), and these motions are ripe for disposition. Having carefully considered the motions, the record, applicable authority, and the arguments of counsel at a motions hearing on January 27, 2011, the undersigned will <u>grant</u> Defendant's motion and <u>deny</u> Plaintiff's motion.

## I. BACKGROUND

This case arises out of Auto-Owners Insurance Company's ("Auto-Owners") denial of insurance coverage and a defense to Oakridge Associates, LLC ("Oakridge") for an action captioned <u>Jewell Gibson v. Oakridge Associates, LLC, and Jay Snover</u>, Rowan County District Court, 06 CVD 1575 ( "Gibson Lawsuit"). Oakridge alleges that Auto-Owners breached its policy when it refused to defend or indemnify Oakridge from the claims asserted by Jewell Gibson ("Gibson") in the Gibson Lawsuit, and in so doing acted in bad faith and was guilty of unfair trade practices. Auto-Owners denied the allegations, asserting that the Gibson Lawsuit was a simple rent abatement action that did not fall within the liability coverage of the Auto-Owners Dwelling Insurance Policy forms

issued to Oakridge. Auto-Owners asserted that the Gibson Lawsuit did not seek recovery for "bodily injury" or "property damage" within the plain meaning of the Landlord Liability provisions of any applicable policy, and alternatively even if there were "property damage," there was no "occurrence" as defined by the policy, and coverage was barred by the exclusions for owned property, expected or intended injury, and contractual liability. Auto-Owners, therefore, asserts that it had no duty to defend or reimburse defense costs, and has no obligation to indemnify for the confidential settlement paid by Oakridge for the Gibson Lawsuit.

## II. STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). A dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As this Court has previously explained,

> Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Such an issue will be shown if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff].

Boggan v. Bellsouth Telecomms., Inc., 86 F. Supp. 2d 545, 547 (W.D.N.C., 2000) (citations omitted).

The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of

2

the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

### III. DISCUSSION

The Jewell Gibson Claim Against Oakridge

Jewell Gibson was a tenant of Oakridge in a rental house located at 899 Oakridge Farm Highway in Iredell County, North Carolina, from August 2000 until July 2005. She was represented by Legal Aid of North Carolina, Inc. in relation to her complaints about the condition of her rental house. Gibson's attorneys wrote a letter to Oakridge on December 2, 2005, describing the substandard condition of the property and demanding rent abatement. The letter demanded $10,000.00 in settlement and summarized the claim as follows:

> As you are aware, it is a violation of state law to fail to put and keep a rental unit in habitable condition. Furthermore, it is an unfair trade practice to rent out a residence that is unfit, and to collect the full amount of rent on a residence that has serious defects.
>
> * * *
>
> You charged Ms. Gibson $510.00 per month in rent for the home. A generous fair market estimate of the home is approximately $200.00. Therefore, you received an extra $310.00 per month from Ms. Gibson for over five years that you were her landlord until you sold the property in July of 2005. As the statute of limitations under the unfair practice law extends to four years, Ms. Gibson has rent abatement claims of $13,330.00, and $39,990.00 when trebled.

After the demand letter, and before the Gibson Lawsuit was filed, Oakridge's managers sent an email to a real estate appraiser seeking an opinion on the Legal Aid claim for rent abatement as follows:

> Thank you for talking to me over the phone. As I indicated to you, Legal Aid of N.C., Inc. has threatened to sue my company, Oakridge Associates, LLC, based on my tenant, Jewell Gibson and Greg Parish, renting a 3 bedroom house from us for over 5 years pursuant to a month-to-month oral lease from August, 2000 through July,

> 2005. They claim that the house in its "uninhabital [sic] condition" was only worth $200 per month. We were renting it for $510 per month.
>
> * * *
>
> If you could provide me with an independent assessment of what the house, garage and approx. 1 acre of land should rent for in its "current condition" with no repairs, this would be useful to me in determining what I do about this case.

The Gibson Lawsuit

On or about May 31, 2006, Gibson commenced a lawsuit against Oakridge as owner and manager of a rental home located at 899 Oakridge Farm Highway in Iredell County, North Carolina. (Gibson Comp. ¶4.) Oakridge's alleged agent Jay Snover ("Snover") was also named as a defendant. The Gibson Lawsuit alleges that on or about July 1, 2000, Gibson and Oakridge entered into a rental agreement for the subject premises pursuant to a month-to-month oral lease (Gibson Comp. ¶5), and that there were numerous defects in the premises throughout her tenancy including, but not limited to, swamp-like conditions in the yard because of a backed-up septic tank, no heating source in the home, a defective water pump, leaking associated with the toilet, sink, and bathtub that caused the walls to rot, rat holes throughout the premises, floor vents that led directly to a dirt ground, four broken windows in the premises, and a peeling and rotting kitchen floor. (Gibson Comp. ¶¶8-24.) The Gibson Lawsuit alleges that Gibson repeatedly complained of these conditions and was told that the unfit conditions would be repaired. (Gibson Comp. ¶¶25-27.) Snover allegedly visited the premises numerous times on behalf of Oakridge, but never made any repairs. (Gibson Comp. ¶¶27-29.) On or about July 29, 2005, Gibson received a letter from Oakridge stating that the property had been sold. (Gibson Comp. ¶30.) On November 2, 2005, the premises was inspected by the Iredell County Health Department for ongoing problems with the septic tank, and the inspector determined that there was a problem with sewage surfacing in the yard. (Gibson

Comp. ¶¶31-32.) Gibson moved out of the premises in November of 2005. (Gibson Comp. ¶¶33.)

The Gibson Lawsuit asserts two claims for relief. Gibson's "First Claim for Relief" is summarized in her Complaint as follows:

> 35. Defendants' failure to keep the leased premises in a fit and habitable condition breached the implied warranty of habitability and violated N.C. Gen. Stat. §42-42.
>
> 36. Plaintiff is entitled to recover damages in the form of a rent abatement calculated as the difference between the fair rental value of the premises as warranted (i.e. in full compliance with N.C. Gen. Stat. §42-42) and the fair rental value of the premises in their unfit condition for the period during which the premises were in a defective or substandard condition, plus any other actual or consequential damages.
>
> ***

Gibson's "Second Claim for Relief" is summarized in her Complaint as follows:

> 38. Defendants' failure to provide a fit and habitable rental unit to Plaintiff constituted unfair and deceptive trade practices in that such actions violated N.C. Gen. Stat. §42-42.
>
> 39. Defendants' actions were unfair, unethical, deceptive, and illegal practices in violation of N.C. Gen. Stat. §75-1.1.
>
> 40. As a result of Defendants' unfair trade practices, Plaintiff was harmed and is entitled to damages in an amount to be proven at trial.
>
> 41. Plaintiff is entitled to recover treble damages resulting from Defendants' unfair and deceptive trade practices pursuant to N.C. Gen. Stat. §75-16.
>
> * * *

Interrogatories sent to Gibson by the attorneys defending Oakridge in the Gibson Lawsuit sought information from Gibson related to her rent abatement and Oakridge's counterclaims, and not about any claims for damage to personal property or personal injury. Similarly, the photographs produced by Gibson's attorneys to Oakridge in support of her rent abatement claim before suit was

filed document the deteriorated condition of the rental house, but do not reflect damage to Gibson's own personal property.

The Gibson Lawsuit was settled by Oakridge for $11,500.00 in May of 2007, and was dismissed with prejudice on June 18, 2007. Nothing in the form of the confidential settlement agreement reflects any payment for damage to personal property or for any personal injury.

The Insurance Claim

Auto-Owners issued to Oakridge Associates, LLC, Dwelling Insurance Policy No. 42-372-760-00 effective 6/16/05 to 6/16/06. This was the last policy issued before Oakridge sold the rental property. Previous policies were also issued by Auto-Owners. The earliest policy showing Landlord Liability coverage is for the period June 16, 2003 to June 16, 2004. All Auto-Owners policies that would have provided Landlord Liability coverage since 2000 utilized the same Landlord Liability form 15055 (7-97) as Policy No. 42-372-760-00.

According to the Affidavit of Bridget Abernathy (Document No. 19), which is uncontested, on June 8, 2006, Oakridge provided notice of the Gibson lawsuit to Auto-Owners' agent and sent a copy of the Gibson Lawsuit. Field Claim Representative Abernathy, who had fifteen years of insurance claims experience, reviewed the Gibson Lawsuit for coverage purposes. She compared the allegations in the Gibson Lawsuit to the terms of the policy, determined that there was no need for further investigation, and concluded that there was no duty to defend or obligation to indemnify Oakridge because the complaint did not seek recovery for "property damage" or "bodily injury" as defined by the Landlord Liability provisions of the insurance policy. On June 12, 2006, Abernathy consulted attorney Neil Holt, an in-house attorney with Auto-Owners, with more than 15 years of experience in insurance coverage analysis, regarding her initial coverage determination, providing him with a memo setting forth her analysis. Holt was also provided with a copy of the Gibson

Lawsuit so that he could perform his own coverage analysis. In an email response to Abernathy on June 12, 2006, Holt agreed with Abernathy's determination, and concluded that additional grounds for denial existed based on the "expected or intended injury exclusion" and the "contractual liability exclusion."

A coverage denial letter was sent by Abernathy to Oakridge on June 16, 2006, setting forth the grounds for denial identified by Abernathy and Holt. Oakridge never questioned or sought any clarification from Auto-Owners regarding the denial letter.

Applicable Law

This case is before the Court based upon diversity jurisdiction and a timely removal by Defendant. The Court has an obligation to apply the substantive law in accordance with the jurisprudence of the Supreme Court of North Carolina or, where the law is unclear, as it appears that the Supreme Court of North Carolina would rule. See Wells v. Liddy, 186 F.3d 505, 527-528 (4th Cir. 1999).

The applicable insurance law in North Carolina is well-established. The insured has the burden of establishing that a claim is within the insuring agreement of the policy. Once it is determined that the claim comes within the insuring agreement, the insurer then has the burden to prove that a policy precludes coverage. Nationwide Mut. Ins. Co. v. Allen, 68 N.C. App. 184, 314 S.E.2d 552, 554 (N.C. App. 1984), review den., 311 N.C. 761, 321 S.E.2d 142 (1984).

Under the comparison test stated in Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 340 S.E.2d 374, 377 (1986), reh'g denied, 316 N.C. 386, 346 S.E.2d 134 (1986), the duty to defend is determined by comparing the allegations in the underlying complaint to the terms of the policy and deciding whether the factual allegations are covered under the contract terms. The Court must "construe the language of the coverage, its exclusions and exceptions, and determine whether

events as alleged in the pleadings and papers before the Court are covered by the policy." Id., 315 N.C. 688, 340 S.E.2d 374, 377. If the facts as alleged in the complaint are covered by the policy terms, the insurer has a duty to defend. When the facts alleged in the complaint indicate the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, it is not bound to defend. Id., 315 N.C. 688, 340 S.E.2d 374, 377. See also, Builders Mutual Insurance Company v. North Main Construction, Ltd., 361 N.C. 85, 637 S.E.2d 528 (2006).

The Applicable Policy Language

Each Auto-Owners policy issued to the insured with Landlord Liability coverage states, in pertinent part, as follows:

> COVERAGE F – LANDLORD LIABILITY
>
> We will pay all sums any insured becomes legally obligated to pay as damages because of or arising out of "bodily injury" or "property damage"…
>
> ***
>
> The policy defines "bodily injury" as follows:
>
> Bodily injury means physical injury, sickness or disease sustained by a person including resulting death of that person.
>
> ***
>
> The policy defines "property damage" as follows:
>
> Property damage means damage to or destruction of tangible property including resulting loss of use of that property.
>
> ***

Gibson Did Not Seek Recovery for Damage to Property of Gibson

The law of North Carolina requires that a landlord comply with applicable building and housing codes, make repairs and keep the premises in a fit and habitable condition, keep the

8

common areas in a safe condition, and maintain in good and safe working order and promptly repair all electrical, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by the landlord. There is no specific notice to the landlord required for conditions that render the premises uninhabitable. N.C.G.S. §42-42§§. The proper measure of damages based upon a breach of the implied warranty of habitability is the difference between the fair rental value in its warranted condition and in its unwarranted condition. <u>Von Pettis Realty, Inc. v. McKoy</u>, 135 N.C. App. 206, 519 S.E.2d 546 (1999). A violation of N.C.G.S. §42-42 (a)(2)§§ per se amounts to an unfair trade practice, which entitles the tenant to treble the rent abatement under N.C.G.S. Chapter 75. <u>See</u> <u>Dean v. Hill</u>, 171 N.C. App. 479, 615 S.E.2d 699 (2005).

A plain reading of the Legal Aid demand letter and the Gibson Lawsuit establishes that Gibson did not seek recovery for "damage to or destruction of tangible property." The Gibson Lawsuit and demand letter allege a litany of defects and/or substandard conditions at the Oakridge rental house. These assertions do not, however, indicate that Gibson suffered damage to or destruction of her *own* tangible property. Rather, these alleged defects in the rental property are set forth to illustrate how Oakridge violated the implied warranty of habitability by failing to properly maintain its own property.

Oakridge's responses to interrogatories from Auto-Owners in this case also reflect the complete absence of any claims for covered "property damage" to Gibson's own property.

> 32. If you contend that the underlying complaint asserted a claim for "property damage", as that term is defined in Auto-Owners' Policy No. 42-372-760-00, state the complete legal and factual basis for such contention.
>
> ANSWER: With respect to the allegations of Interrogatory No. 32, the Plaintiff objects to any requirement that it be required to provide the "legal" basis for such a contention. The Plaintiff objects to Interrogatory No. 32 pursuant to Rule 26(b). Subject to this

> objection, the Plaintiff says and alleges that the Plaintiff Jewel Gibson has described property damage to windows, to plumbing fixtures, to walls, all of which allegedly affected the individual inhabitants and visitors to the premises.

It is well-established that liability policies such as the one at issue in this matter cover only *liability to third parties*, and do not protect the insured from *damage to its own property*. <u>Auto-Owners Inc. Co. v. Northwestern Housing Enterprises, Inc.</u>, 2008 WL 901176, 8 (W.D.N.C. 2008); <u>American Motorists Ins. Co. v. Asalone</u>, 2004 WL 3197546, 8 (W.D.N.C. 2004). Any alleged damage to the rental home (i.e. rotting walls, rat holes, broken windows, peeling kitchen floors) is damage to the property of Oakridge, not Gibson, and is not "property damage" covered under the liability portions of the dwelling insurance policy.

There are no decisions in North Carolina or in the Fourth Circuit that specifically address whether a claim for breach of the implied warranty of habitability constitutes "property damage." However, in <u>Great American Ins. Co. v. McKemie</u>, 244 Ga. 84, 259 S.E.2d 39 (1979), the Supreme Court of Georgia considered a similar issue. McKemie brought a suit against Great American, claiming that it had wrongfully refused to defend her in a prior civil action. Great American had issued a landlord-tenant liability policy to landlord McKemie, which covered damages for "bodily injury" or "property damage" caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises. The Great American policy also provided a duty to "defend any suit against the insured seeking damages on account of such bodily injury or property damage." Two tenants sued McKemie and she called upon Great American to defend her. Great American refused to defend on the grounds that the suit against McKemie was one alleging a failure to provide an adequate and lawful rental dwelling, and that no damages were sought on account of "bodily injury" or "property damage". The Supreme Court of Georgia, in holding that the denial

10

of coverage was proper, stated as follows:

> In the case at bar, Great American did not insure against housing code violations, nuisance, or any breach of a landlord's contractual duties to his tenant. Had the tenants won their suit and recovered the damages they asked (rent previously paid, damages for nuisance, damages for constructive eviction, etc.), Great American would not have had to pay the claim. No liability covered by the policy was asserted.

Id. at 84.

Similarly, in Personal Services Insurance Co. v. Ferrell, 1979 WL 207029 (Ohio App. 6 Dist., 1979), an insurer commenced an action seeking a declaration that it had no duty to defend or obligation to indemnify its insured landlord for claims arising out of an underlying action brought by the insured's tenants. The underlying action sought damages for, among other things, the landlord's breach of housing codes, the landlord's breach of the implied warranty of habitability, and the landlord's failure to provide the bargained-for premises. In interpreting an identical definition of "property damage" to the one in the Auto-Owners policy, the Ohio appellate court determined that there was no claim for "property damage" set forth in the underlying action. The Court stated, in pertinent part, as follows:

> These allegations state violations of various statutory duties and breaches of contract and of warranty in the lease agreement. If any damages result therefrom, they would be in the form of damages for breach of contract or warranty. Any sums required to be paid by the insured would not be in the nature of a liability for which the insurance company has agreed to compensate.

Id. at 3.

It is also evident that Gibson's claim was for purely "economic loss." Gibson sought the difference between the fair rental value of the premises as warranted and the fair rental value of the premises in its unfit condition, and for the period during which the premises were in a defective or

substandard condition. (Gibson Comp. ¶36.) In holding that "economic loss" does not constitute "tangible property" as required for there to be insured "property damage", the Court in In Re Russell, 285 B.R. 877 (M.D.N.C. 2001), stated as follows:

> Plaintiffs' contention that economic losses should be considered "tangible property" for purposes of insurance coverage involves a matter which apparently has not been addressed by the North Carolina courts. However, cases from other jurisdictions consistently have concluded that economic loss claims such as lost profits, loss of an investment or loss of the anticipated benefit of a bargain, do not involve "the loss of use of tangible property" and therefore do not constitute property damage for purposes of insurance coverage.

In Re Russell, 285 B.R. 877 (M.D.N.C. 2001)(citations omitted).

Gibson Did Not Seek Recovery for Bodily Injury

The Gibson Lawsuit contains no allegations of any physical injury, sickness or disease to Gibson, and it does not set forth any damages for alleged physical injury, sickness or disease. Nevertheless, Oakridge points to allegations that "water was leaking, walls falling, and rodents invading at the premises" and other descriptions in Gibson's discovery responses to Oakridge of unfit conditions of the house, including noxious odors and slippery conditions in the front yard due to a sewage leak, the lack of a central heating system requiring the children to sleep under numerous blankets, and ceramic tiles around the bathtub falling on Gibson and her children, as amounting to health hazards and thus claims for personal injury.

Oakridge's responses to Auto-Owners' interrogatories in this case reflect the basis of Oakridge's assertion that there was a claim for "bodily injury" by Gibson:

> 35. If you contend that the underlying complaint asserted a claim for "bodily injury", as that term is defined in Auto-Owners' Policy No. 42-372-760-00, state the complete legal and factual basis for such contention.

> ANSWER: Objection. The Plaintiff objects pursuant to Rule 26(b). Subject to this objection, in NC, to determine coverage the underlying Complaint must be read broadly. Additionally in NC a Complaint is filed with mere "notice pleadings." The Plaintiff Gibson's Complaint, includes a claim for unfair and deceptive trade practices which includes claims for actual damages. Paragraph 9 of Plaintiff Gibson's Complaint describes damage to Plaintiff's two minor children. The inherent nature of all of the allegations to Plaintiff's Complaint describes personal injury associated with the consequential damages from the damaged property located within the structure. Paragraph 18 describes damage to Plaintiff due to a "noxious" odor from standing water, which allegedly came from damage to plumbing fixtures. Paragraph 20 describes "breaks" to windows that led to environmental damage to Plaintiff.

Finally, Oakridge asserts – and emphasized during the hearing on the motions – that the use in the Gibson Lawsuit of the phrase "plus any other actual or consequential damages" in the First Claim for relief must mean that she is also making personal injury claims not specifically set forth in the Gibson Lawsuit.

A common sense reading of the pleadings, however, especially in the context of the pre-suit demand letter by Gibson, and confirmed by the subsequent discovery conducted in the Gibson Lawsuit, does not suggest the reasonable possibility of claims for personal injury. Rather, the litany in the Gibson Lawsuit and discovery responses regarding the substandard conditions of the rental house merely illustrate the factual basis of the claim for rent abatement. While it is possible in virtually any lawsuit that claims can later be amended to assert potentially covered claims, an insurer's coverage determination is based upon the pleadings and facts then reasonably available to the insurer. Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 340 S.E.2d 374 (1986), reh'g denied, 316 N.C. 386, 346 S.E.2d 134 (1986). If the claims change or facts develop indicating that a covered claim is potentially presented, the insured would be obligated to place the insurer on notice of the developments. See eg., Great American Ins. Co. v. McKemie, supra. There

was no such notice to Auto-Owners in this case, and the record does not reflect developments warranting any such notice.

## IV. CONCLUSION

The Court concludes that the Gibson Lawsuit did not set forth claims for "property damage" or "personal injury," as those terms are defined in the Auto-Owners policies, so as to bring the Gibson Lawsuit within the insuring provisions of those policies. Therefore, it is not necessary to address the other limitations and exclusions to coverage asserted by Auto-Owners. Similarly, because it has been determined that Auto-Owners properly and timely denied a defense and indemnity to Oakridge, the claims by Oakridge of bad faith breach of contract or unfair and deceptive trade practices are without merit.

**IT IS, THEREFORE, ORDERED** that "Defendant's Motion For Summary Judgment" (Document No. 16) is **GRANTED,** and that "Plaintiff's Motion For Summary Judgment" (Document No. 20) is **DENIED**.

Signed: February 3, 2011

David C. Keesler
United States Magistrate Judge